UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN STILES, <br>     Plaintiff, <br><br> v. <br><br> BROWN UNIVERSITY, <br>     Defendant. | ) <br> ) <br> ) <br> )    C.A. No. 1:21-cv-00497-MSM-LDA <br> ) <br> ) <br> ) <br> ) |

ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the Motion of the plaintiff, John Stiles ("Stiles")[1], for entry of a preliminary injunction to restrain and enjoin the defendant, Brown University ("Brown"), from enforcing its decision to suspend him from academic and athletic activities pending the resolution of a Title IX complaint against him. The Court has carefully considered the memoranda and documents filed by both parties and heard extended argument on January 20, 2022.

For the following reasons, the Court GRANTS the plaintiff's Motion. (ECF No. 10.)

## I.     BACKGROUND

The plaintiff is a senior at Brown and a member of the varsity lacrosse team. As a result of an alleged incident on October 30, 2021, a fellow student, Jane Roe, accused the plaintiff of sexual assault and filed a Title IX complaint with Brown on

---

[1] The plaintiff is referred to by the pseudonym of John Stiles per order of this Court.

1

November 18, 2021.  A Brown Threat Assessment Team met the next day to "determine whether there is reasonable cause to believe that the Prohibited Conduct is likely to continue and/or the [plaintiff] poses a significant threat of harm to the health, safety, and welfare of others and the University community." (ECF No. 22-2.)  The Threat Assessment Team completed a rubric of questions concerning the allegations, any potential threat to the community, and any pattern of similar transgressions.  Most of the questions were answered in the negative, but "due to the egregious nature of the alleged behavior" the Threat Assessment Team recommended an interim suspension pending determination of the Title IX complaint.  *Id.*

On November 30, 2021, John appealed his interim suspension to Vice President Eric Estes and submitted his response to the Title IX complaint. (ECF No. 1 ¶¶ 11-12).  On December 6, 2021, Mr. Estes partially granted John's appeal by allowing him to complete the current semester remotely and remanded the question of John's suspension for the Spring semester to Brown's threat assessment team for renewed consideration based on John's response to the Title IX complaint.  *Id.* ¶ 13.  On December 10, 2021, the Threat Assessment Team affirmed its conclusion that the plaintiff's "Prohibited Conduct was likely to continue" as well as Mr. Estes' decision that the plaintiff should be suspended beginning on January 7, 2022, pending an investigation and resolution of the Title IX complaint. (ECF No. 22-7.)

The plaintiff filed the instant Complaint alleging that Brown's suspension of him while the resolution of the Title IX complaint is pending is in breach of its contract with him.  He moves for injunctive relief enjoining Brown from removing

2

him from campus and suspending him from academic and athletic activities prior to the resolution of the Title IX matter.

This matter is brought pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332; as such, Rhode Island law applies.

## II.     PRELIMINARY INJUNCTION STANDARD

"In determining whether to grant a preliminary injunction, the district court must consider: (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 9 (1st Cir. 2013). Of these factors, "[t]he movant's likelihood of success on the merits weighs most heavily in the preliminary injunction calculus." *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020). A party "need not prove its claims at the preliminary injunction stage, only that it is likely to be able to prove its claims later." *Kleczek on Behalf of Kleczek v. R.I. Interscholastic League, Inc.*, 768 F. Supp. 951, 953 (D.R.I. 1991).

## III.     DISCUSSION

### A. Likelihood of Success on the Merits

The plaintiff has alleged against Brown a breach of contract. Under Rhode Island law, the elements of an action for breach of contract are the existence of a contract, a breach, and damages flowing from the breach. *See Petrarca v. Fidelity and Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005). There is no dispute that a contract existed between the parties.

3

The "student and private university relationship is essentially contractual in nature." *Gorman v. St. Raphael Academy*, 853 A.2d 28, 34 (R.I. 2004). "The relevant terms of contractual relationship between a student and a university typically include the language found in the university's student handbook." *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007); *Gorman*, 853 A.2d at 34. Courts often interpret the terms of a student handbook "in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them." *Havlik*, 509 F.3d at 34. "A breach of contract is established if the facts show that the university has failed to meet [the student's] reasonable expectations." *Walker v. President & Fellows of Harvard Coll.*, 840 F.3d 57, 61–62 (1st Cir. 2016) (internal quotation marks omitted).

The operative contract is Brown's Student Conduct Procedures and Sexual Misconduct Procedure. (ECF No. 1 ¶ 102.) Relevant here, the Student Conduct Procedures entitle the plaintiff to "not be presumed responsible of any alleged violations unless so found through the appropriate student conduct hearing" and to be "afforded an opportunity to offer a relevant response." *Id.* ¶ 104. The Sexual Misconduct Procedure also "presumes that the Respondent is not responsible for the alleged Prohibited conduct" and further guarantees John "meaningful opportunities to participate" in the Title IX process. *Id.* ¶ 105. This reasonably includes any important phase of the process that will affect John's rights, such as his continuing education, access to campus, or participation in school sponsored activities.

4

The Sexual Misconduct Procedure permits the "interim actions" of emergency removal from campus and suspension pending resolution of a complaint if "there is reasonable cause to believe that the "Prohibited Conduct is likely to continue and/or the Respondent poses a significant threat of harm to the health, safety, and welfare of others or the University community." *Id.* ¶ 106.

Here, however, the facts suggest that, in both assessments that it made, the Threat Assessment Team failed to demonstrate anything that would indicate they afforded the plaintiff a presumption that he was not responsible for the alleged conduct as required by contract. Instead, it focused on the nature of the unproven allegations and removed him from campus and suspended him before performing any investigation of those allegations. The plaintiff therefore is likely to succeed on his claim that Brown could not fairly determine if there were "reasonable cause to believe" that the plaintiff would likely continue his alleged prohibited conduct or otherwise be a threat to the university community.

In sum, the plaintiff has made a sufficient showing that he is likely to succeed on his claim that the Threat Assessment Team failed to afford him a presumption that he was not responsible for the misconduct alleged and thus that "the university has failed to meet [the student's] reasonable expectations" of the terms of the relevant contract. *See Walker*, 840 F.3d at 61–62.

### B. Irreparable Harm

The plaintiff meets his burden to demonstrate irreparable harm in the absence of an injunction. The plaintiff's transcript currently indicates that he is suspended for the Spring 2022 semester. (ECF No. 24-9.) It is not speculative to presume that

such a notation on his permanent record will have lasting, negative ramifications. *See Doe v. Univ. of Conn.*, 2020 WL 406356, at 2 (D. Conn. Jan. 23, 2020) (finding irreparable harm where the student "would also need to explain the suspension notation on his UCONN transcript, and a truthful explanation would seriously hinder his prospects"); *Doe v. Middlebury Coll.*, 2015 WL 5488109, at 3 (D. Vt. Sept. 16, 2015) (finding irreparable harm where the student "would have to explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap"); *King v. DePauw Univ.*, 2014 WL 4197507, at 13 (S.D. Ind. Aug. 22, 2014) (finding irreparable harm where plaintiff would "forever have either a gap or a senior-year transfer on his record," noting the inevitability of questions by future employers or graduate schools for which "any explanation is unlikely to fully erase the stigma").

### C. Balance of the Equities and the Public Interest

The balance of the equities favors the plaintiff. Brown's interest in protecting the plaintiff's accuser is mitigated by the fact that a no-contact order is in place between the plaintiff and her, he has not contacted her since before it entered, when he responded to a text message that she sent. Indeed, the plaintiff was on the campus for nearly three weeks without incident between the alleged assault and the date of the suspension. Moreover, while Brown has an interest in applying its own disciplinary policies, it faces little hardship in allowing the plaintiff to proceed with his academic and athletic activities while the disciplinary process plays out. The ramifications of the suspension to the plaintiff, however, are substantial.

The public interest, and in particular the university community, is best served by the school applying its disciplinary procedures according to the terms of its policies.

## IV.   PRELIMINARY INJUNCTION

For the foregoing reasons, the Court GRANTS the plaintiff's Motion for a Preliminary Injunction (ECF No. 10) and issues the following PRELIMINARY INJUNCTION:

Brown University is enjoined from denying the plaintiff his contractual rights under the Student Conduct Procedures and Sexual Misconduct Procedure, from suspending him from campus pending resolution of Jane Roe's Title IX complaint, from denying him class attendance and participation and the ability to continue practicing and playing on the varsity lacrosse team, until such time as he is found responsible for the alleged Title IX violations or a renewed threat assessment is properly conducted in accordance with the plaintiff's contractual rights.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
January 25, 2022